## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Jack J. Grynberg, Grynberg Petroleum Corporation (TX), Grynberg Petroleum Corporation (CO) and Pricaspian Development Corporation, for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings Against Phillips 66 GMBH, Total (Suisse), S.A., and Eni Suisse, S.A. | 17 MISC 57<br><br>Case No. 17 Misc. 57<br><br>Motion To Grant Application |



PLEASE TAKE NOTICE that upon the annexed Application, the accompanying Declaration of Bruce Marks, including Exhibits, and the accompanying Declaration of Adrian Burgi, including Exhibits, the undersigned will move this Court at Part 1, to be held at 500 Pearl Street, Courtroom 15B, New York, NY 10007, on the 7th day of March 2017 at 11:00 a.m., or as soon thereafter as counsel may be heard, for an Order substantially in the form of the attached proposed Order, (1) pursuant to 28 U.S.C. §1782, authorizing the Applicants to serve the proposed subpoenas set forth at Exhibit 5 to the Application, and (2) for such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 17, 2017

LAW OFFICE OF DANIEL L. ABRAMS, PLLC

By: *Daniel L. Abrams*
Daniel L. Abrams
dan@lawyerquality.com
31 Penn Plaza, 15th Floor
New York, New York 10001
Telephone: (646) 821-4575
Facsimile: (646) 536-8905
Attorney for Applicants

Of Counsel: Bruce Marks, Esq.

[RECEIVED FEB 21 2017 U.S.D.C. S.D. N.Y. CASHIERS]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Jack J. Grynberg, Grynberg Production Corporation (TX), Grynberg Production Corporation (CO) and Pricaspian Development Corporation, for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings Against Phillips 66 GMBH, Total (Suisse) S.A., and Eni Suisse S.A. | Case No. 17 Misc. ___ |

**APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AGAINST PHILLIPS 66 GMBH, TOTAL (SUISSE) S.A., AND ENI SUISSE S.A.**

1. Jack J. Grynberg ("Grynberg"), Grynberg Production Corporation (TX), Grynberg Production Corporation (CO), and Pricaspian Development Corporation (collectively, "Applicants") seek an order under 28 U.S.C. § 1782, to conduct discovery for use in civil proceedings in Switzerland ("Swiss Proceedings") and aver as follows:

## INTRODUCTION

2. Applicants assert claims against Phillips 66 GmbH (formerly Conoco AG), Total (Suisse) S.A., and Eni Suisse S.A., (collectively, "Swiss Defendants") for violating Swiss unfair competition laws by exploiting Applicants' confidential proprietary information related to oil fields in Kazakhstan without paying compensation. An initial hearing at which evidence may be submitted is scheduled in the Phillips 66 matter for May 3, 2017.

3. In aid of the Swiss Proceedings, Applicants seek to serve document subpoenas on James H. Giffen ("Giffen"), The Mercator Corporation ("Mercator"), and Cooley, LLC ("Cooley") (collectively, "Discovery Targets"), all of whom reside and thus can be found in this District. Applicants also seek to serve a deposition subpoena on Giffen.

1

4. Giffen and Mercator assisted the Swiss Defendants' parent companies in utilizing Applicants' confidential proprietary information. As part of this assistance, Giffen and Mercator engaged a scheme to bribe Kazakh government officials ("Bribery Scheme") in order to obtain valuable oil field concessions for which they were indicted and pled guilty in this District. Giffen and Mercator provided non-privileged documents to Cooley, their counsel in the criminal proceedings, which relate to this Bribery Scheme. This discovery is critical to proving Applicants' claims against the Swiss Defendants by showing Giffen and Mercator used Applicants' confidential proprietary information, including as part of the Bribery Scheme, to benefit the parents of the Swiss Defendants and, ultimately, the Swiss Defendants themselves.

5. *First,* this Application satisfies §1782's statutory requirements described in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264-66 (2004):

    a. Location: The Discovery Targets can be found in this District.

    b. In Aid of Foreign Proceedings: The Discovery is sought for aid in Swiss civil proceedings.

    c. Interested Persons: Applicants are interested persons because they are claimants in the Swiss Proceedings.

6. *Second,* this Application satisfies the discretionary factors set forth in *Intel, supra.* which weigh heavily in favor of granting the Application:

    a. Non-Participants: The Discovery Targets are not participants in the Swiss Proceedings and are outside the jurisdiction of the Swiss courts.

    b. Receptivity: Swiss courts are receptive to judicial assistance, including the provision of discovery, from the United States.

2

  c. <u>Non-Avoidance</u>: The discovery is not an attempt to avoid evidence gathering restrictions in Switzerland. To the contrary, the sought discovery cannot be obtained in Switzerland because the Discovery Targets are not within the jurisdiction of the Swiss courts.

  d. <u>Non-Burdensome</u>: Applicants' document requests are not unduly intrusive and burdensome. In fact, they pose no burden on the Swiss Defendants because the discovery is sought from Discovery Targets independent from them.

7. Thus, the Application should be granted.

## SWISS PROCEEDINGS PARTIES AND DISCOVERY TARGETS

### Swiss Claimants and Instant Applicants

8. Jack Grynberg ("Grynberg") is a Colorado resident with a business address of 3600 S. Yosemite St., Suite 900, Denver, CO 80237.

9. Grynberg Production Corporation (TX), ("GPC TX"), is a Texas corporation with a principal place of business at 3600 S. Yosemite St., Suite 900, Denver, CO 80237.

10. Grynberg Production Corporation (CO), ("GPC CO"), is a Colorado corporation with a principal place of business at 3600 S. Yosemite St., Suite 900, Denver, CO 80237.

11. Pricaspian Development Corporation, ("Pricaspian"), is a Texas corporation with a principal place of business at 3600 S. Yosemite St., Suite 900, Denver, CO 80237.

### Swiss Defendants

12. Phillips 66 GmbH (formerly Conoco AG) ("Phillips 66") is a Swiss limited liability company with an address c/o Lambrigger Treuhand AG, Industriestrasse 49, CH-6302 Zug, Switzerland, and is a subsidiary of Phillips 66 Corporation (USA) (Phillips) (which was

spun off from ConocoPhillips in 2012, which was a merger of Conoco and Phillips Petroleum in 2002), an American multinational oil and gas company.

13. Eni Suisse S.A. ("Eni Suisse") is a Swiss corporation with an address of Avenue de Gratta-Paille 1, CH – 1018 Lausanne, Switzerland, and is a subsidiary of Eni S.p.A., ("Eni"), an Italian multinational oil and gas company.

14. Total (Suisse) S.A. ("Total Suisse"), is a Swiss corporation with an address of Chemin des Coquelicots 16, CH - 1214 Vernier, Switzerland, and is a subsidiary of Total S.A. ("Total"), a French multinational oil and gas company.

### Discovery Targets

15. Upon information and belief, James H. Giffen ("Giffen") resides at 1000 Old White Plains Road, Mamaroneck, New York.

16. The Mercator Corporation ("Mercator") is a New York corporation with an office at 375 Park Avenue, Suite 1507, New York, NY 10152. Upon information and belief, Giffen is the CEO and owner of Mercator.

17. Cooley, LLP ("Cooley") is a law firm with an address of 1114 6th Ave # 46, New York, NY 10036. Cooley represented Giffen and Mercator in the criminal action related to the Bribery Scheme.

### FACTUAL BACKGROUND[1]

**The Role of Giffen and Mercator in Misappropriation of Applicants' Confidential Proprietary Information and Bribery Which Benefited the Swiss Defendants**

18. From 1989 onward, Grynberg spent substantial time and money developing confidential proprietary seismic, environmental, and economic information (the "Confidential

---

[1] The Factual Background is based, inter alia, on the allegations in the Swiss Proceedings and the Giffen Indictment.

4

Proprietary Information") for oil and gas fields in Kazakhstan known as the Greater Kashagan Oil Field ("GKOF").

19. In 1990 and 1991, Applicants[2] entered into development agreements with international oil companies, including British Petroleum plc ("BP"), and confidentially shared the Confidential Proprietary Information regarding the GKOF. However, to the exclusion of Applicants, BP with the help of Giffen formed a consortium to develop the GKOF based upon Applicants' Confidential Proprietary Information. The consortium was designated the Offshore Kazakhstan International Operating Company ("OKIOC" or "Giffen Consortium"), and consisted of BP, Statoil ASA, Shell Oil Company, Mobil Corporation, Inpex Corporation, and corporate parents of the Swiss Defendants, Phillips 66, Total Suisse, and Eni Suisse.[3]

20. In December 1994, Mercator entered into an agreement with the Kazakh Ministry of Oil to assist the Ministry in coordinating a strategy for foreign investment and negotiations with foreign partners.

21. In 1997, the Giffen Consortium obtained from Kazakhstan a concession to develop the GKOF by using Applicants' Confidential Proprietary Information and paying a $175 million in bribes to top Kazakh officials through Giffen and Mercator's network of companies and banks. The Giffen Consortium members paid the bribes because they know they value of the GKOF based upon Applicants' Confidential Proprietary Information. Thus, discovery is

---

[2] In 1993 and 1997, Grynberg, GPC TX, and GPC CO assigned certain of their interests to Pricaspian.

[3] Certain Applicants engaged in United States litigations with BP and Statoil which resulted in a settlement agreement by which they were paid substantial sums. Certain Applicants also engaged in United States litigations against Shell, Total, Giffen, and Mercator which were dismissed based on the statute of limitations. Applicants have never sued the Swiss Defendants in the United States and no United States court has decided issues of Swiss Law related to the claims against the Swiss Defendants which involves continued use and profit from the Confidential Proprietary Information.

5

likely to reveal Giffen, Mercator, and the Giffen Consortium used Applicants' Confidential Proprietary Information to economically justify such large scale bribery.

### The Indictment and Guilty Pleas of Giffen and Mercator

22. In 2003, Giffen and Mercator were indicted in this District and charged with, *inter alia*, bribing Kazakh officials in violation of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-2. Marks Dec., Giffen Indictment, Ex. 4, ¶¶47-51; 66-69. The Indictment alleged:

> In 1997 and 1998, a consortium of oil companies [the Giffen Consortium], negotiated to acquire from the Kazakh government the right to participate in the joint venture known as the "Offshore Kazakhstan International Operating Company" ("OKIOC") to explore for oil in certain offshore blocks in the Kazakh sector of the Caspian Sea. James H. Giffen, the Defendant, and Mercator where hired by the Kazakh government to assist into negotiations.
>
> On or about November 18, 1997, the oil companies and Kazakhstan entered into a "Production Sharing Agreement" governing their participation in OKIOC's exploration. Under the agreement, the oil companies agreed to pay the Kazakh a 175 million (which is divisible by seven) "signature bonus" due shortly after the signing of the agreement, which payment should only be due when production begins in earnest (currently not expected to resume until 2015). KO-1 specified that the bonus should be divided amongst three bank accounts: USD100 million to an account at Credit Suisse in Switzerland, 52 million to an account at Pictet & Cie, in Switzerland and 23 million to an account at [Credit Agricole Indosuez, "CAI")] in Switzerland (the "CAI escrow account").

Indictment, ¶¶47-48.

23. The Indictment detailed how the Giffen Consortium paid bribes to Kazakh officials, through Giffen and Mercator. In 1997 Kazakhstan and CAI entered into an "Exclusive Paying Agency Agreement" to govern the CAI escrow account, and which provided that CAI would distribute funds to consultants that assisted Kazakhstan in the OKIOC transaction, including Mercator. Indictment, ¶¶49-51.

24. Thereafter, the Giffen Consortium companies transferred millions of dollars to the CAI escrow account in Geneva, which then pursuant to a sham agreement between CAI and

6

Denlay Associates, Ltd., ("Denley") a BVI company secretly owned by Giffen, to pay "finders and consulting fees", transferred the funds to Denley. Denley then forwarded funds to entities controlled by Kazakh officials and Giffen "disguise[ing] the fact that almost 90% of CAI's purported fee was being paid to Giffen and, through Giffen, to Kazakh officials and Giffen himself." Indictment, ¶¶49-51. These payments were bribes to induce the Kazakh officials to grant rights to develop the GKOF.[4]

25.     In August 2010, Giffen pled guilty to a misdemeanor tax violation and Mercator plead guilty to a felony violation of the FCPA.[5]

## SWISS PROCEEDINGS

26.     On April 2, 2014, Applicants brought claims under the Swiss law for the equivalent of unjust enrichment against Phillips 66 in Zug, Switzerland. The Statement of Claim was filed on July 29, 2014 and an initial hearing at which new evidence may be submitted is scheduled for May 3, 2017. Burgi Dec., ¶12-13, Phillips 66 Claim, Ex. 1.

27.     In August and September 2014, matters were initiated through the conciliation process[6] against Total Suisse in Geneva, Switzerland and Eni Suisse in Lausanne, Switzerland

---

[4] *See also, United States v. Giffen*, 473 F.3d 30, 31 (2d Cir. 2006) ("The indictment alleges that Giffen paid more than eighty million dollars in bribes to the President of Kazakhstan and two other Kazakh officials. The indictment alleges that Giffen created Swiss bank accounts in the names of offshore companies owned by the officials or members of their families. According to the indictment, Giffen made payments into those accounts from fees that he and Mercator received in oil deals they brokered for the Republic, as well as from escrow accounts holding payments due the Republic from oil transactions. According to the indictment, these deposits were bribes, disguised in some cases as loans or as payments of the fees of consultants who had helped negotiate oil deals for Kazakhstan.")

[5] As reported in the media, Giffen's lenient treatment apparently resulted from the United States' unwillingness to have a public trial on issues related to Giffen's defense that the CIA authorized him to bribe the Kazakh officials. See *The Fuel Fixers*, Dec. 23, 2007 New York Times, Ex. 6.

[6] Swiss civil actions start with an application for conciliation containing the names and addresses of the parties, the prayers for relief and a brief description of the matter in dispute. With the filing of the conciliation application, the case is initiated and the statute of limitations is interrupted. If no settlement is reached during the conciliation process, the conciliation

for violating Swiss unfair competition laws by exploiting Applicants' Confidential Proprietary Information without paying compensation. The court authorized filing the Statement of Claims, but there they were not filed within the authorized term. Burgi Dec., ¶15, Total Suisse Authorization to Proceed, Ex. 2 and Eni Suisse Authorization to Proceed, Ex. 3. The conciliation process will be re-commenced shortly which will result in the court issuing authorizations to proceed. The Statement of Claims against Total Suisse and Eni Suisse will then be filed. Burgi Dec., ¶15.

28. Under Article 5 (a) and (b) of the Swiss Unfair Competition Law ("UCL"),[7] absent a contract or other express permission, if a party uses the work of others, that party must account for profits from that work and share a portion with the creator of the work. Burgi Dec., ¶5-6.

29. Applicant's Confidential Proprietary Information of the GKOF is protected work product within the meaning of the UCL. Burgi Dec., ¶7.

30. Under the UCL, members of the Giffen Consortium, including new members that joined the consortium, can be liable for use of Applicants' Confidential Proprietary Information. Burgi Dec., ¶8.

---

authority issues an authorization to proceed, enabling the claimant to lodge its statement of claim with the court of first instance. If no statement of claim is filed, the conciliation process can be re-commenced resulting in the conciliation authority issuing an authorization to proceed. Statement of claims may be filed thereafter. Burgi Dec., ¶14.

[7] UCL Article 5 provides: "(Exploitation of the Achievements of Others) [Anyone] shall be deemed to have committed an act of unfair competition, … who, in particular, *(a)* without authorization, exploits results of work entrusted to him, for example, tenders, calculations or plans, *(b)* exploits the results of work of another, for example, tenders, calculations or plans, although he must know that they have been handed to him or made available without authorization, *(c)* by means of technical reproduction processes and without a corresponding effort of his own, takes the marketable results of work of another person and exploits them as such." Burgi Dec., ¶5.

31. Under the UCL, it is irrelevant that the Swiss Defendants were not direct members of the Giffen Consortium, because if Swiss Defendants trade in oil from the GKOF as indirect beneficiaries of the Confidential Proprietary Information used by their parent companies, this would generate profits in violation of Applicants' rights. Burgi Dec., ¶9.

32. In addition, under Swiss law, if the parent companies of the Swiss Defendants were acting in bad faith, in principle, this also is true for the subsidiary Swiss Defendants. Burgi Dec., ¶10.

33. Bad faith would include bribing Kazak government officials. Burgi Dec., ¶11.

34. In support of their claims in the Swiss Proceedings, Applicants seek evidence to establish, *inter alia:*

   a. The members of the Giffen Consortium possessed Applicants' Confidential Proprietary Information.

   b. The members of the Giffen Consortium members used Applicants' Confidential Proprietary Information as the economic basis for forming and/or entering into the Giffen Consortium.

   c. The Giffen Consortium used Applicants' Confidential Proprietary Information as the economic basis for obtaining the concession to develop the GKOF.

   d. The Giffen Consortium used Applicants' Confidential Proprietary Information as the economic basis for engaging in the Bribery Scheme.

   e. The payment of bribes through Swiss banks by Giffen Consortium members involved benefit to the Swiss Defendants.

   f. Kazakhstan government officials entered into the Production Sharing Agreement based upon Applicants' Confidential Proprietary Information.

    g. The Swiss Defendants acted in bad faith trading or dealing in oil derived from the GKOF concession obtained through the Bribery Scheme.

Burgi Dec., ¶16.

## THE SUBPOENAS

35. Applicants seek authorization to serve document subpoenas on the Discovery Targets and a deposition subpoena on Giffen. See Subpoenas, Marks Dec., Ex. 5.

36. In summary, the Subpoenas seek information related to:

    a. Giffen Consortium members' possession, knowledge and use of Applicants' Confidential Proprietary Information, Requests Nos. 1-8, Marks Dec., Ex. 5;

    b. Formation of the Giffen Consortium and reasons companies joined the consortium, Requests Nos. 1-8, Marks Dec., Ex. 5;

    c. The information relied upon for the negotiation, agreement and operation of the November 18, 1997 Production Sharing Agreement between the Giffen Consortium companies and Kazakhstan, Requests Nos. 1-8, Marks Dec., Ex. 5;

    d. The payment of bribes through Swiss banks by Giffen, Mercator, and Giffen Consortium members and involvement of the parents of the Swiss Defendants in the payments. Requests Nos. 9-19, Marks Dec., Ex. 5;

    e. Use of off-shore and/or intermediary companies controlled by or for the benefit of Giffen Consortium members and/or parents of the Swiss Defendants to facilitate the receipt of and/or transfer of funds related directly or indirectly to the Bribery Scheme. Requests Nos. 9-19 Marks Dec., Ex. 5;

## ARGUMENT

37. 28 U.S.C. §1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

38. "The twin aims of [28 U.S.C. §1782] are to provide 'efficient means of assistance to participants in international litigation in our federal court' and to encourage 'foreign countries by example to provide similar means of assistance to our courts.'" *In re Ishihara Chem. Co., Ltd.*, 251 F.3d 120, 124 (2d Cir. 2001). "A request for discovery under § 1782 presents two inquiries: first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so." *In re Grupo Qumma, S.A.*, 2005 U.S. Dist. LEXIS 6898, *2 (S.D.N.Y. April 22, 2005).

### The Application Satisfies The Mandatory Requirements Of 28 U.S.C. §1782

39. The three statutory factors are met when (1) the party from whom discovery is sought resides (or is found) in the district, (2) that the discovery is for use in a proceeding before a foreign tribunal, and (3) that the applicant is an "interested person" before such foreign tribunal. *In re Ishihara Chem. Co., Ltd.*, 251 F.3d 120, 124 (2d Cir. 2001). The statutory § 1782 factors are easily met in this case.

40. ***First,*** the Discovery Targets, Giffen, Mercator and Cooley, are located in this District.

41. ***Second,*** the discovery is for use in foreign proceedings. *See Intel*, 542 U.S. at 257-58 (2004) ("foreign or international tribunal" includes conventional civil, commercial, criminal, and administrative courts). The cornerstone of Applicants' claims in the Swiss Proceedings for violation of the Unfair Competition Law is that if a party uses the work of others to make a profit, it must give some of the profit to the creator of the work such as Applicants.

11

42. The sought discovery is relevant to show (a) the Giffen Consortium possessed Applicants' Confidential Proprietary Information; (b) the Giffen Consortium members used Applicants' Confidential Proprietary Information as the economic basis for forming and/or entering into the Giffen Consortium; (c) the Giffen Consortium used Applicants' Confidential Proprietary Information as the economic basis for obtaining the concession to develop the GKOF; (d) the Giffen Consortium used Applicants' Confidential Proprietary Information as the economic basis for engaging in the Bribery Scheme; (e) the payment of bribes through Swiss banks by Giffen Consortium members involved the parents of the Swiss Defendants; (f) Kazakhstan government officials entered into the Production Sharing Agreement based upon Applicants' Confidential Proprietary Information; and (g) the Swiss Defendants acted in bad faith trading or dealing in oil derived from the GKOF concession obtained through the Bribery Scheme.

43. ***Third,*** each Applicant is an "interested person" within the meaning of §1782 as they are litigants in the three Swiss Proceedings, the Phillips 66 matter where the statement of claim has already been filed and the Total Suisse and Eni Suisse matters where the conciliation process will be re-commenced shortly. S*ee Intel,* 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of the 'interested persons' who may invoke § 1782").[8]

**The *Intel* Discretionary Factors Weigh Heavily In Favor Of Granting the Application**

---

[8] In fact, "[i]t is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259 (citation omitted). *Intel* only requires such use to be "within reasonable contemplation". *Id.* at 259.

44. "Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77, 78 (2d Cir. N.Y. 1997) (reversing refusal to grant § 1782 discovery.) In exercising its discretion, this Court should consider: (1) whether the person from whom discovery is sought is a participant in the foreign case, (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the discovery request is an attempt to avoid foreign evidence-gathering restrictions; and (4) whether the discovery request is unduly intrusive or burdensome. *See Intel,* 542 U.S. at 264-66. The *Intel* discretionary factors weigh heavily in favor of granting the Application.

45. ***First,*** the Discovery Targets are not parties to the Swiss Proceedings. Burgi Dec., ¶17. As *Intel* explained, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *See id.* at 264. The Swiss Courts have no authority to order Giffen, Mercator or Cooley to produce documents that Applicant seeks, or compel Giffen to appear for deposition. Burgi Dec., ¶18. This factor weighs strongly in favor of granting the requested discovery.

46. ***Second,*** Swiss courts historically have been receptive to judicial assistance from the United States. *See Optimal Invs. Servs, S.A. v. Berlamont (In re An Order Pursuant to 28 U.S.C. § 1782)*, 773 F.3d 456 (2d Cir. N.Y. 2014) (affirming § 1782 discovery for use in Swiss criminal proceeding); *In re Gianasso*, 2012 U.S. Dist. LEXIS 25763 (N.D.Ca. 2012) (granting discovery for use in Swiss civil and criminal proceedings); *Weber v. Finker*, 2008 U.S. Dist. LEXIS 31067 (M.D.Fl. April 15, 2008) (granting motion to compel discovery authorized under

13

§1782 for use in Swiss proceeding) *aff'd* 554 F.3d 1379 (11th Cir. 2009). Indeed, Applicants expect to introduce the evidence at issue into the Swiss Proceedings. See Burgi Dec., ¶19.

47. ***Third,*** the discovery request is not an attempt to avoid evidence-gathering restrictions in Switzerland. The proposed Subpoenas constitute legitimate methods of obtaining evidence that is unavailable in Switzerland, Burgi Dec., ¶20. Applicants are not required to seek "information through the foreign or international tribunal before requesting discovery from the district court." *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1098 (2d Cir. 1995) (rejecting "any implicit requirement that any evidence sought in the United States be discoverable under the laws of the foreign country").[9]

48. ***Fourth,*** Applicant's proposed Subpoenas are not unduly intrusive or burdensome. On the contrary, the requested discovery is narrowly tailored to seek evidence and testimony relating to the Giffen Consortium and its exploitation of the GKOF. Further, as Giffen and Mercator were defendants in criminal proceedings and represented by Cooley, it is expected that relevant and related documents are already organized and segregated by subject matter.[10] This factor strongly favors the grant of discovery.

49. ***Finally,*** §1782 does not require Applicants to establish that the sought evidence is admissible in the foreign action. *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 82 (2nd Cir. 2012) (just "as a district court should not consider the *discoverability* of the evidence

---

[9] *See e.g. In re The Procter & Gamble Co.,* 334 F. Supp.2d 1112, 1116 (E.D. Wis. 2004) (holding that "to decline a § 1782(a) request based on foreign non-discoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States").

[10] Certain Applicants sought similar discovery from the Discovery Targets in unrelated litigation in Colorado state court in 2016. The Discovery Targets served objections where were not resolved because it was determined the discovery was not necessary for that proceeding. Applicants expect the Discovery Targets will serve similar objections to the Subpoenas which can be resolved either through negotiations or motion practice.

14

in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a *section 1782* application").[11]  Nonetheless, Applicants have gone the extra mile by submitting evidence that Swiss courts will accept foreign gathered evidence and deposition testimony and will consider this evidence. Burgi Dec., ¶21.

## CONCLUSION

50.     The Application satisfies §1782's statutory requirements and the discretionary factors heavily favor granting it.  Granting the Application would further §1782's twin goals of providing efficient means of assistance to participants in foreign litigation, and encouraging foreign countries to provide similar means of assistance to our own courts. The Court should grant the Application and authorize the Subpoenas.

**Law Office of Daniel Abrams, PLLC**

By: *Daniel L. Abrams*

Daniel Abrams
31 Penn Plaza, 132 W. 31st St. 15th Fl.
New York, New York 10001
(646) 821 4575
Dan@LawyerQuality.com

**Marks & Sokolov, LLC**

By: Bruce Marks/DA

Bruce S. Marks
1835 Market St.
Philadelphia, PA 19103
(215) 569-8901
Marks@mslegal.com

Attorneys for Applicants

---

[11] *See e.g. In re Request for Judicial Assistance from the Seoul Dist. Criminal Court,* 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the admissibility before such tribunals of the testimony or material sought.").

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Jack J. Grynberg, Grynberg Production Corporation (TX), Grynberg Production Corporation (CO) and Pricaspian Development Corporation, for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings Against Phillips 66 GMBH, Total (Suisse) S.A., and Eni Suisse S.A. | Case No. 17 Misc. ___ |

### [PROPOSED] ORDER

Jack J. Grynberg ("Grynberg"), Grynberg Production Corporation (TX), Grynberg Production Corporation (CO), and Pricaspian Development Corporation (collectively, "Applicants") applies for an order under 28 U.S.C. § 1782, to conduct discovery and serve document subpoenas on James H. Giffen ("Giffen"), The Mercator Corporation ("Mercator"), and Cooley, LLC ("Cooley") (collectively, "Discovery Targets"), all of whom reside and thus can be found in this District. Applicants also seek to serve a deposition subpoena on Giffen. Applicants' Application is GRANTED.

Based upon the papers submitted, the threshold requirements are satisfied here. The Discovery Targets from which Applicants seek discovery are located within the Southern District of New York. Applicants initiated legal proceedings in Switzerland against Phillips 66 and intend to re-commence additional Swiss civil proceedings against Total (Suisse) and Eni (Suisse) shortly. The material Applicants seek to discover is potentially critical to the issues in the pending and potential Swiss Proceedings. (*See Generally* Burgi Decl. at ¶16).

The Discovery Targets are not party to the Swiss Proceedings, especially in light of the Swiss Proceedings being founded upon alleged violations of the Swiss Unfair Competition Law

1

Article 5 as related to use and benefit from Applicants Confidential Proprietary Information related to the GKOF, there is no reason to believe that documents in the possession of the New York Discovery Targets would be within the jurisdictional reach of the Swiss courts.

Moreover, Applicants' request is not an attempt to avoid evidence-gathering restrictions in Switzerland. The proposed Subpoenas constitute legitimate methods of obtaining evidence that is unavailable in Switzerland, Burgi Decl., ¶¶ 18, 20.

I conclude that the discovery Applicants seek is not unduly intrusive or burdensome. Because all of the factors guiding my exercise of discretion weigh in favor of granting the Application, I choose to do so.

For the foregoing reasons, the Application for Discovery Pursuant to 28 U.S.C. § 1782, (Doc. 1), is GRANTED.

It is hereby ordered that Applicants are authorized to issue and serve subpoenas on the Discovery Targets containing the substance and form of the subpoenas attached as Exhibit 5 to the Declaration of Bruce Marks:

It is further ordered that Applicants are authorized to serve a subpoena for deposition on James Giffen.

_____

USDJ

2